We're here to hear the case of Pennsylvania Department of Environmental Protection v. Trainer Custom Chemical. James Haukis and Jeremy Hunter. And call that case now. Mr. White. Yes, Your Honor. You may proceed. May it please the Court, my name is Douglas White. I have the honor of representing the Department of Environmental Protection. And I would like to reserve four minutes of my time for rebuttal. Okay, that's done. The District Court decision in this case is not just an outlier. It is the one and only case in the history of American jurisprudence that found that a current owner is not liable for response costs incurred by the government prior to purchase. Well, right. And we've read the briefing on that and have that argument from you. But why don't you address head on, will you, the position taken by the District Court, which is that a logical conclusion from the Hartside case of being a current owner determined as of the way Hartside did it is that liability follows from that. I mean, I understand the District Court's position, I'm sure you do too, to be that it doesn't make any sense to say liability attaches then if what you're going to say next is, yeah, but you're responsible for all costs. That's the position that's taken, right? Why is that logically flawed? For a variety of reasons, Your Honor. It contradicts the plain and simple language of both Circula and Haska. If it was plain and simple, we wouldn't be here, right? No, it can't be that plain and simple. Well, the District Court relied heavily on the Hartside case, which was a very odd decision. If you read the lower case decision, you find that Hartside is actually a prior owner during a time of disposal of hazardous waste. So he was liable under A2 in Section 107 of Circula. There's no reason to go through the verbal gymnastics to try to shoehorn him in to A1, current owner and operator, because the entity was clearly liable under A2 of 107. But the court there states that owner status is determined at the time that cleanup costs are incurred. If we look at the definition of owner as at the time they're incurred, do we have here at a minimum a genuine issue of material fact in that the District Court makes the observation that there's nothing in the record supporting that costs continue to be incurred even beyond 2009? Well, Your Honor, the argument that the District Court is making that liability attaches at the time of cost has severe consequences on both the statutes, for reality, and for the environment. The consequence of that decision is that a new owner can buy property, as this entity did, knowing it was contaminated, knowing that response costs were incurred, knowing that the cleanup was still ongoing. They admit in the record that they were well aware EPA and DEP were still trying to mediate it. Then they bought it for $20,000. They immediately sold the scrap metal, or they soon sold the scrap metal for like $900,000, and now in possession of a 12-acre industrial site, they picked up for $20,000, which has considerably more value now that EPA and DEP have worked on cleaning it up. But one way of looking at Hartz I and perhaps reconciling some of the language there with even the outcome that you were seeking is to look at the accrual of costs, because the way the Court there was approaching it, it was tying liability and ownership status to accrual of costs. Is there an argument on your part, or would you suggest we perceive this as costs continuing to accrue beyond the purchase by TCC, or is that not supported by the record because, as the District Court suggested, costs were not accrued after the purchase date? Well, the facts are that most of the costs were incurred prior to TCC's purchase, but the costs continued after they purchased it. I think the record is clear on that, but going on. And when you say it's clear, tell us where in the record it would tell us that costs were continuing to be accrued and incurred as it related to the 2007 chemical release. Okay. So the timeframe, I think, Judge Krause, I think, and I know I am interested in is what happened after October 2012 in terms of incurring expenses, and for what purpose were those expenses incurred? Okay. The hazardous substances were there for years. The site was abandoned. EPA and not a remedy action, but a removal action. If you look on page 53 of the appendix, there is a purchase agreement between Traynor Custom Chemical and the Borough of Traynor, which states that the subject property, despite certain environmental issues which are being addressed by EPA and DEP, has considerable value, which can be realized upon the completion of environmental remediation. You are saying, appendix 53, that language in this agreement was your evidence to support the fact there was ongoing cleanup occurring after the purchase? Well, that demonstrates that Traynor Custom Chemical was well aware of it at the time it purchased the property. We also have additional cost summaries from DEP indicating we are continuing to work on removal actions and actions. And how can we tell that that relates, or maybe it doesn't matter, but how can we tell that it relates to the chemical release as compared to the asbestos release which occurred after Traynor and company, and when I say that, Traynor and the independents entered the property and engaged in their efforts of removing material from the property? Part of it is that it was a removal action, not a remediation, so that EPA and DEP did not render the facility safe, did not remove all the hazardous substances. Now you said that, but in your brief you used the word remediation to talk about what was going on, and here at the podium you said remediation. Now, I'm not trying to fault you for a word, but since you yourself are slipping back and forth between the verbs, how are we to be confident that what was going on was a removal action and not a remediation action as well as a removal action? Well, for example, we could go to page 61 of the appendix, which an inspection court in 2014, two years after they purchased the property, found that several storage tanks were reserved to be cut open and unknown contents noted to be spilling onto the ground. The reason for that is, I think even they were, in their briefings say there was a removal action, but they argue that there's a remediation action going on too. That's what I read in one of the briefs, one of the two briefs. If that's true, does that make a difference in terms of responsibility here? I mean, we've said we're not going to be wound up about the, at least not in this oral argument, about the statute of limitations, but the statute of limitations, at least in Hart's side, was a basis for the decision about liability. There was an argument that the statute of limitations context should inform how we view substantive liability, right? That was one of the three reasons the Hart's side court gave, but I would suggest as court, that was an appropriate reason, because Hart's side said the statute of limitations only applies to the current owner, the defendant, as that court called it. In reality, it also applies to possible future owners, such as Trainer Custom Chemical. Their whole effort to try to claim this, they're barred by- So what does the word current mean in this context? I would say that in its plain English language, Your Honor, they purchased the site in 2012 and have been the current owner ever since. I think that's what was intended, both by Circa and by Haska. And are we talking about a removal action, not a remediation? I apologize if I've been careless with my verbs, Your Honor, but it is a removal action by definition. Okay. And with respect to the time frame after October 2012, are you representing that the that had been there in 2007, that brought everybody there to cause the removal action to take place, and that it continued after October 2012? Yes, Your Honor, and it continues today. And in the record for us to know this, you're asking us to look at Appendix 61, which is the report of some other entity directed to the DEP about what's happened at the property. Is that correct? That's one of the locations. I mean, I think it's clear that, sorry, I shouldn't keep saying it's clear. The thing that's purchased the property before the removal action was, the initial removal action was over. They opened up tanks to spill out some of the existing hazardous materials, which would require additional removal action. So that was a presence of a threatened release existed before they even got there, because there were still chemicals in those tanks. Absolutely. There's no question that most of the hazardous substances were deposited at the site before they purchased it, which is why there are defenses in Cercla and Haska that people who want to buy a facility which is contaminated can go through, like the bonafide prospective purchaser, the innocent landowner. There's a variety of defenses. And none of those were invoked here, is that correct? They did not attempt to qualify for any of them, and if you look at the statute, they would not qualify for any of them. You asked us in your reply brief to take a look at a website, take additional notice of a website that recounted activities at this site. In the website, it talks about personnel were no longer, they were not mobilized, or some phrase like that, as of December 2012. But then there's another statement on the document that says completion date, and it says May 2013. What does that mean? The EPA inspection reports, the mobilization is the active activity at the site. When they consider it finished, there's additional steps, more administrative, and those sort of things that have to be done. However, if you keep reading on that website, they had to come back again and address and have conversations with Hal Kiss and Hunter from the EPA on-site coordinator about handling waste and how much they know about Haska and those sort of things. And is that why on the right-hand side of the top it says completed May 2013, something like that? I would assume so, Your Honor. But you don't know that for sure? I do not know for sure, but either date is well beyond the date that Trainor Custom Chemical purchased the site. So it's clear they bought it while the removal actions were still ongoing. Is that a 2013 date, even the removal date that you're putting forward? I took it from the supplemental appendix at both pages 40 and 49 to 51, that there are particular costs in the record itemized by individuals involved. Do those relate to removal actions, again, for the same chemicals that remained on the property from 2007? I don't know specifically which ones you're referring to, but we have no evidence of additional hazardous substances being brought to the site. So I would say that all the removal costs and actions relate to the hazardous substances that were at the site. It's conceivable that some of those costs also relate to litigation, and those obviously would not count. Are you able to represent what the costs that post-date 2012, the ones that appear in the supplemental appendix as itemized costs, what those relate to? I do not have that exact information at my fingertips, but certainly at the district court level we would be required to present evidence on all costs and where all costs came from. We would be certainly able to do that. Judge Schwartz had asked you whether your adversary had invoked any of the defenses below. Your response was that they didn't qualify. Did they or did they not invoke the purchaser defense or incident owner defense? They did not invoke any defenses. They did not contact and notify the department before they purchased the property, and they also would not qualify if they had tried. The district court had seemed to ascribe particular significance to a first release in 2007. Should we be perceiving different releases over time, and does the record support that, and is there legal significance to there being different releases? There have been many releases over time. I would ascribe little to no legal significance because both SIRCLA and HASCA include strict liability for all costs, so it's irrelevant legally what caused the release or when it was. An owner is strictly liable for all costs of all removal actions, so they would be liable regardless of when or why, barring statutes, limitations, and other concerns when the release happened. Let me ask you, and I recognize your time is up, we'll give your colleague a little extra time too if he needs it. Is this a binary choice, this argument about current owner, you're either a current owner as of the time the legal action is initiated or you're a current owner as of the time that the removal costs are incurred? Does it have to be either or, or can the statute allow for both of those things to be true? I know the district court presented it as a binary choice. I'm not sure that's the case. I think your honor has an interesting idea that it may include both, but SIRCLA certainly provided current owner under sub 1 and past owners under sub 2, so they made a distinction between the two, just like this court did in the Lipko, New Jersey case of Congress clearly intended that they be treated differently as they put in two different subsections with different requirements. So I would suggest you should treat current owners under sub 1 and past owners at the time of hazardous substances released under sub 2 just as Congress intended. Well then what is, what is the consequence of, it sounds like you're arguing for binary choice as well. It sounds like, correct me if I'm wrong, but it sounds like you're saying because SIRCLA treats current owners and past owners differently, you've got to come down on one side or the other, Third Circuit, on whether a current owner is determined as of date that recovery costs are incurred or date that the legal action is filed. Am I hearing you correctly? That would be the clearest approach, your honor. Okay, if that's true, then I have two questions for you. One, does it even matter here? In this instance, is it Pennsylvania's position that trainer chemicals would be liable under either rule, either fleet factors or hard side? That would be difficult, your honor, because trainer custom chemical was not the owner at the time of the disposal of hazardous substances, which is what makes the owner liable under sub 2. They are the owner currently who is strictly liable for all costs of all removal actions, so they would be liable under 1. Yeah, follow me. Treat them as current owner. As under the fleet factors test, would they be liable? Under fleet factors, yes. Because? Because fleet factors said current owner is defined at the time the complaint is filed. And the complaint was filed in 2015, and they purchased the property in 2012. And was there still a threatened release? This is not an element of CERCLA? There still is today, your honor. Okay, but all right. And under hard side, would they be liable? Certainly a district court would say no, but you have to notice the lower hard side court case cited six different cases that all found current owner is defined at the time the complaint is filed, including cases from the 4th Circuit, the 11th Circuit, a variety of jurisdictions. So I think hard side is much more of an outlier than the district court seems to think. Well, isn't there, were costs being incurred at the time that Traynor Custom Chemical owned the property? Yes, your honor. So it's not really that much of an outlier, is it? Because that's the common link between hard side and this. In both instances, the hard side entity that was tagged by the Court of Appeals was an owner at the time costs were incurred. The only difference is really chronological, isn't it? That in hard side, it was the, like you said, the prior owner, it was kind of like a Stony Creek. The hard side entity that was on the hook was like Stony Creek, right? Yes. But what's common about, I guess, where your position is on Traynor and the hard side individual is when the costs were incurred, correct? Well, when the costs were incurred in the hard side case, hard side owned the property. For the entire time? Yes. But in this instance, costs were incurred at both before ownership and while ownership was ongoing, right? That's correct. And is it your position that if costs were incurred while there was the person, the entity had ownership, it's on the hook for all costs incurred? Yes, your honor. And is that, is your view, because that's the statutory language, there's all costs without any kind of temporal or type limitation? Exactly right, your honor. Now, that's consistent with looking at it as accrual with a doctrine of continuity of accrual, right? You could phrase it that way, yes, your honor. But the statutes, both Sukla and Haske, simply say liable for all, and Haske even specifically says in the statute, strictly liable for all costs which are reasonable at the time the interim costs were incurred. As opposed to at the time when you own it, or various other statements, it simply says  So if that's true, then even under the rule in Harside, your view of Harside, they're liable, right? Under Haske, yes, your honor. Well, and under Sukla? No. I thought your position, both in the briefing and here was, once you're a current owner, you're on the hook for everything. That's correct. Right? Okay. So if they're a current owner because they are the owner at the time costs are being incurred, which according to your timeline, they were under Sukla too, correct? Yes. Then they're liable for everything, are they not? That's what we would argue, yes. Okay. Well, then by your argument, it doesn't matter whether it's Harside or Fleet Factors, does it? Because they're on the hook either way. Am I misunderstanding it? Well, I remember Harside tried to say the current owner was only the owner at the time of the disposal of the waste and when those costs were incurred. So Harside would try to like carve off all the cost prior to trying to custom kill before purchasing the product. Harside didn't say disposal, that is when the pollution occurred, it was when the costs were incurred. But you've represented here, costs continue to be incurred. Yes. So you could certainly argue if that's on your continuation. I think that was your argument, that's why I'm having a little trouble here because it sounds like you're fighting the question, but the question is just trying to suss out what your position is. And I thought your position was, the Pennsylvania Department of Environmental Protection was still incurring costs between October 2012 and December 2012 at least, right? Yes. Okay, so if they're still incurring costs during that period, then even under Harside, your argument is, they're current owners, they're on the hook for everything, isn't it? You can certainly take that position. Yes, your honor. Well, I'm not asking you to take it, I'm trying to find out if you've taken it. I thought you had taken it. Yes, your honor. That's our position. Then it doesn't matter whether fleet factors or Harside applies in this case because they're liable either way, is that correct? Yes. Okay. Just a last question to get your thoughts, but also your colleagues. Is the right way to think about this case the definition of owner at all or are we looking at what all costs mean? Because it seems to flip back and forth, the district court focusing on costs and with your adversary's argument really being about ownership, but there are two different parts and different language in the statute. Which is really at issue here? The district court would have you believe owner. We don't believe that's the case. It says an owner from which there is a release, that's the language in circular, not from when there's pending a lease or during a release happens, but a facility from which there is a release is liable for all costs. District court ignored the concept of all costs and ignored Hasker completely where it says you're strictly liable for all costs, of all interim costs. So I think the language we would focus on more is the defendant is liable or the party is liable for all costs and interim costs, not splitting hairs about timing or ownership issue. Okay. Anything further? Thank you, Mr. White. We'll have you back on rebuttal. Thank you. Mr. Hampton. Good morning. Good morning. I have with me today three special guests. My daughter, her friend Tessa, and her friend Sierra. I thought I would just mention that. Good morning. I'm attorney Lloyd Hampton. I represent Custom Chemical LLC, Jeremy Hunter, and also arguing on behalf of Mr. Halkias. As I stood here today and listened to the colloquy that went between the court and the attorney for Mr. White, it struck me that the commonwealth seemed to overlook a number of very significant factors in this case. I think the first significant factor that the commonwealth overlooks is the complaint does not state a claim upon which relief could be granted here. When I read this complaint, the gravamen of it is found in paragraphs 15 and 29. At 15 it says, in August of 2012, removal actions conducted at the site by the U.S. EPA and Department were completed. That's in August of 2012. The trainer, Custom Chemical, did not take possession of the site or ownership of the site until October of 2012. I thought, and for purposes of this argument, if you've got issues of fact you want to identify, that's fine, but I understand their position to be, and indeed the district court to take their position to be, that costs were ongoing. Even if EPA was incurring costs, the state of Pennsylvania was incurring costs, and that those costs continued at least through December of 2012. So taking that as a baseline for purposes of our discussion, why don't you start where Mr. White left off and answer for me, if you would, whether indeed it makes any difference in this case whether we approach it under the Hearthside case or the Fleet Factors case in deciding whether Custom Trainer is going to be liable. Well, I think we can look at both of those cases, Your Honor, and I'll tell you why. Under Fleet Factors, the harbinger or the starting point as for a current owner, according to the argument of the Commonwealth, is the point in time the complaint is filed. Right. What that fails to take into consideration and account is when there is a release of between the polluter and the governmental body that's insisting it get cleaned up, such that no complaint is filed. Well, sure. You could hypothesize a circumstance where a polluter could have a defense of settlement and release, right? But that's not the circumstance we've got here. The question the district court focused on was the current owner question. It said current owner, we're going with Hearthside and not with Fleet Factors. If you go with Fleet Factors, the action was filed while Custom Trainer is the owner. That much is clear, isn't it? That's correct. Okay. So, looking at Hearthside, which the district court focused on, if you ask the question the way Hearthside did, when were the costs incurred? Were costs not being incurred between October 2012 and December 2012 by the state of Pennsylvania? There were costs being incurred, but I'm still not clear what those costs were. I understand that there were costs being incurred for soil testing, personnel. I don't know that there was any pollution remediation because of the record. I just couldn't find it in the record. Well, when I look at the answering brief that was filed on behalf of Custom Trainer, and they quote this, the Pennsylvania folks do in their briefing, the very opening line in the summary of argument is, at the time that Pelley's purchased the site in question, cleanup activities were almost complete. Well, almost isn't all the way complete. By definition, almost means not complete, right? Well, when I say almost complete, that's because they were cleaning up the piping, the tanks, the buildings, not hazardous materials. They were demolishing the site, and that's why in paragraph 29 of the Commonwealth's complaint, it says they went to the site in 2013 and witnessed rapid demolition of pipes, tanks, and buildings. Does it make any difference at all if the costs that they're incurring are actually scraping the chemicals out of the ground or removing the tanks which were leaching the chemicals? Certainly. How so? Pipes, tanks, and buildings are not hazardous substances, Your Honor. Well, if they're leaching hazardous substances, isn't their removal part of the cleanup? I don't know that they were because there's nothing in the complaint that claims that. Well, I took their complaint to in fact be saying that, that this is continued recovery costs. These are all recovery costs. So maybe what you're saying is there's a question of fact. Okay, let's set that aside for a minute. If we were to accept their argument that these were recovery costs, isn't the acknowledgment here that their cleanup activities were not all the way complete enough to put you, even under hard side, in the zone of liability? It could place you in the zone of liability, Your Honor, but not the zone of liability for everything that occurred from 2006 forward. Okay. I think that's the problem. Where do you get that? I get that from several different places. The first one is under the covered person section of CERCLA. Number one, the owner and operator of a facility from which there is a release or threatened release which causes the occurrence of response costs of a hazardous substance shall be liable for all costs of removal. Okay. No, it says all costs. You just said it, all. All costs. But from that point forward. Yeah, where did you get that piece? The temporal piece. The temporal piece is the piece you appear to be reading in, and it's one that, to your credit, the district court accepted, but where does it come from? And how is it consistent with the concept of strict liability? And how does it not read out the brownfield amendments in the prospective purchaser? I don't mean to pile on, but. . . You can just answer any one of those questions. Well, because, first of all, when you look at the liability here, CERCLA was designed to make those responsible for the pollution pay for it. Trainer Custom Chemical. . . Is that true? I thought CERCLA was designed to put every potentially responsible party on the hook, and then when they're all on the hook, let them sort it out so that the taxpayers aren't paying the bill, but people in that group of PRPs, potentially responsible parties, are the ones on the hook. Isn't that the design of CERCLA?  And I'll tell you what those limitations are that I believe are found in the body of CERCLA itself. If you look under the definitions of CERCLA, under section 9601.20A2i and 3i, in there it specifically says, the term owner-operator means, small 2i in the case of an onshore facility, the person owning or operating such facility. And small 3i, in the case of any facility, control of which was conveyed due to tax delinquency or similar means to either the state or local government, any person who owned or operated or otherwise controlled activities at the facility immediately beforehand. So I'm not following you. How does that take somebody who is in the category of one of the four buckets of potentially responsible parties, one of which is by admission here, an owner-operator of a facility, how does that take your client off the hook? There is a holding in the case of matter of Penn Central Transportation Company, which was an eastern district of Pennsylvania bankruptcy court case, 92BR605. It cites this very same language, and in that case the company was bankrupt. And what the court held in there was that when the Sauer amendments, Congress explicitly legislates on the subject of bankruptcy, it is reasonable to suppose that Congress has in mind the distinctions between the debtor and the reorganized successor. Thus the failure to impose liability upon the reorganized successor is a strong signal of congressional intent. But that's successor liability. It's a corollary. It comes out of the same statute, and it identifies a tax delinquency. Isn't that really a bankruptcy-specific thing? We're not in the bankruptcy context here. We're just trying to figure out liability. So maybe the easiest way to do this is to ask the question Judge Schwartz put to you. Your position is there's some temporal limitation, and that's a position the district court took. You can be a current owner and you can be liable, but your liability won't be for all costs, even though the statute says all costs. If that's true, then explain why Congress would have made the Brownfields amendments in 2002 and say to people there's a way for you to limit your costs going backward in time, and here's the way you can do it. If it's true that your costs were already limited going backward in time, what purpose would there have been in having that 2002 amendment? Because as I read the statute, Your Honor, I look at when a person creates a release and costs are incurred, from that point forward that costs are expended, the person who made that release should be liable. Well, I understand that that's a personally defensible policy assertion, but I'm trying to get you to grapple with what it appears to be Congress's policy assertion was, which it didn't say all costs after you get a hold of the property. It said all costs, full stop. So if Congress decides not to put a temporal limitation on it, why should we read a temporal limitation into it? Because I think the statute is forward looking in its construction, and when it says, let me just go to the specific language of it, from which there is a release or threatened release which causes the incurrence of response cost, you shall be liable for all costs. And again, if Craner Custom Chemical didn't make any release whatsoever, they could be liable for nothing. But they only are liable from that point in time that they actually polluted the property. You're saying that the only one who's responsible is the polluter, but the statute talks about individuals who own property where there's a threatened release. And so it seems to be that what Congress was doing was, if one is going to be the beneficiary of a piece of property where the government has started the cleanup, it is giving an avenue for the government to get reimbursed, including those who take the property when there's still an ongoing threatened release. Well, the government did obtain a reimbursement here, Your Honor, under the Tim Turner bankruptcy case. Yeah, but what about the continuing incurring costs? Plus, I don't know whether or not they're fully made whole. I would assume they're not. That's why they brought this case. Well, again, I think the district court's decision in holding was correct, that from the point in time that Craner Custom Chemical caused the release and there were expenses incurred, at that point forward, they're responsible. And I would agree with that. But I guess I go back to Judge Jordan's question, is where's this temporal limitation in the language of the statute? Case law says circle applies retroactively. The statute talks about things in the past and the present. It takes a whole line of folks who can be held liable, past owners as well as current owners. So where in the statute can we lean on your temporal limitation that your client's responsible only for costs incurred after October 2012? And how do you reconcile that with the fact that Congress gave a mechanism for current owners to limit those past costs through the prospective purchaser provisions of the Brownfield Amendments? I believe we have to look at a couple different harbingers of congressional intent. One, of course, is found in the Herthside case, which the district court in this case discussed, and that was the commencement of the running of the statute of limitations. Isn't that just another? But that's a limitation. That's another way a current owner protects themselves, or even the past ones, I suppose. So that limits things that are going backwards. So I guess it does support a temporal limitation in the sense of a statute limitation that looks backwards, but where else can we do it? I think it also blends in with the statute itself, Rich, because it's contextual evidence that Congress intended the owner at the time of cleanup to be the current owner. Okay. Assume that's true and it's the current owner. How does it flow logically from that definition of current owner that the current owner is only liable for certain costs and not all costs? That's the logical step which I understand your opponents to be taking issue with. If you read the district court's opinion at page 21 of the slip opinion, it cites the language that you just discussed from the Ninth Circuit, and then the district court says, quote, in other words, a new owner is not liable for recovery costs incurred before he took ownership of the facility. It's the in other words part that I understand Pennsylvania is having a difficult time with and I'd like you to help us with. Logically, how does it flow from the assertion that a current owner is defined by when costs are incurred to the next step, the district court took, and the current owner is not liable for costs preceding that point? Well, there's a case, Carson Harbor Village Unlimited versus Unical, cited at 270F3D863, and in it, if liability is established, the defendant may avoid joint and several liability by establishing that it caused only a divisible portion of the harm. For example, it contributed only a specific part of the hazardous substance that spilled, and I think you have that here. I mean, train or custom chemical had nothing to do with Stony Creek Technologies LLC. That's just joint and several liability. That's apportionment that could be decided. Damages. Exactly. Damages if your client decided to bring suit against other potentially responsible parties. You might have a 107A cost recovery action. You might have a 113F contribution action under CERCLA. But, you know, maybe. I don't know. We're not getting into that. But how does any of that speak to whether or not, as a current owner and a potentially responsible party, custom train or chemical is liable for anything less than, quote, all costs, unquote? Well, Judge, again, I look at the actual language of the statute and the owner or operator of a vessel from which there is a release or threatened release, which causes the occurrence of response cost. And, again, there is a period, a specific period or point in time, when that person's actions have created a date where response costs were made. You're tying it back to causation. But how do you address the appellant's argument here that to take your reading of the statute and allow only prospective costs, if you have a property that has transferred ownership a number of times and there's the serendipity of when the remedial action takes place, when there's different removals, that there's no connection between the actual responsibility of a given party and the costs that they are then responsible for if you're going to contain them to just that period of ownership? How would that make any sense? It would, first of all, from a fairness standpoint, you know, why should train or custom chemical be responsible for things that occurred when train or custom chemical didn't even exist? Number two, train or custom chemical went in there to clean up the property, and now they're being penalized on the basis of we witnessed a rapid demolition of pipes, tanks, and buildings. Why is it penalizing of any particular owner when they have noticed that the property has ongoing costs associated with environmental cleanup, and that unless they are able to take some appropriate action ahead of time with bona fides, you know, this is an owner prospective purchaser defense, that all of the owners along the way, if property transfers ownership, are going to have joint and several liability, and they'll have to work it out among themselves at some point? Because, again, Your Honor, I don't know what these costs were. From what I could see in the record, they were nothing more than soil or water testing costs. I don't see where the commonwealth removed anything here. And what they're trying to do is pin the costs of what they paid for electricity beginning in December of 2006. Let me go back and make sure we're clear on that, because I took from the district court's actual findings. There would be certain things that, although perhaps potential arguments were really forfeited here. One is that defendants do not dispute that GCC, as owner and operator of the site, is a responsible party under CERC law. That was conceded below. Only for things post their ownership and only for things that they've actually done that created a release or fair release. They were arguing about what all costs means, not about whether you're a responsible party. Well, again, I limit all costs. I read all costs to mean all costs that were incurred as a result of your activity, trainer custom chemicals activity, not all costs related to things that went on 10 years before. But you're arguing on appeal that that circumscribes the definition of ownership. The district court observes that you did not dispute that GCC was the responsible party under CERC law. For the costs subsequent to their ownership. That's an argument as to all costs, as to scope of liability, not as to who constitutes the responsible party. Well, again, Your Honor, my reading of all costs is all costs incurred as a result of what trainer custom chemical did, not all costs looking at the whole umbrella of whatever happened here. The other finding the district court makes is that there was no argument from the defendants that there was, during their ownership, a release of hazardous substances at the site. That instead that the two individual owners merely point fingers at each other, each arguing the other was responsible for any release that occurred. But both admit that a release or releases did occur. And that's not disputed either. That there were additional releases of the same chemicals during the period of ownership. That I don't know, Your Honor. What I read it to mean was asbestos and removal of asbestos. I don't see how that comes out. Because the scrapping, you know, your clients aren't on a good position in terms of eliciting sympathy. They bought this property for $20,000. They sent scrappers in and reaped hundreds of thousands of dollars in profits from scrapping. And in doing so, they released chemicals. And that wasn't even disputed below. They were tearing stuff out. And in tearing stuff out, there were releases. And so you can't really argue to the contrary here on appeal what was conceded below. So we've got to focus on what I understand your argument to be here, which is the current owner quote-unquote argument. And I think we've got your argument on that. But maybe you have some further questions. Just in terms of the nature of the releases that occurred, you mentioned asbestos. But as your colleague pointed out, there's a report that indicates that there was also cutting of a tank that released chemicals into the ground. No, it's an unknown substance, Judge. We didn't say chemical. We just said an unknown substance. You're not suggesting that was asbestos? No. Nor am I suggesting it was a hazardous substance because an unknown substance does not rise to the level of a hazardous substance. Okay, do you have anything further? No, thank you. All right. Okay, thank you, Mr. Hampton, for your argument. Mr. White, we'll hear you on rebuttal. Your Honors, there were several references to congressional intent in the discussion of the train of custom chemical. I think it's clear from the case law that congressional intent has two-fold. Clean up contaminated properties and ensure that people responsible for those who profit from contamination bear the cost of it, not the public at large. The consequence of the District Court's decision is that the Department and EPA and every other state can no longer recover response costs they spent in cleanup and doing removal actions at facilities when a new owner comes in. That would be shifting the cost of removal actions and other cleanup activities from the innocent taxpayers whose money paid for this cleanup and allowing the new owners to reap all the windfill profits and a significant increase in value of the property coming in after the cleanup has been done. What's your response to Mr. Hampton's assertion that the only costs that were going on post-October 2012 were costs associated with what Pennsylvania chose to do and tearing down the site, not cleanup costs, not recovery costs? In other words, to put it in surplus speak, I guess you could say it's an argument that you shifted to remediation so you were doing something different. This was not a recovery action at that point. I was surprised to hear that, Your Honor, because Pennsylvania absolutely did not tear down or destroy anything. The DEP was engaged in removal actions, sampling, testing, removal, this sort of work. It was trained or custom chemical. They cut open the tanks, tore down the buildings, spread the asbestos, spilled the unknown materials onto the ground while we were trying to finish removal actions, thereby complicating and causing greater expense and effort on the part of the department. So there was ongoing removal actions as there still is today trying to clean up and address what they've done to this facility. Was your reading of CERCLA that causes a new owner to be responsible for old costs and discourage the kind of investment that the Brownfield Amendments ought to encourage? Not at all, Your Honor, because there's a variety of defenses built into CERCLA. Congress intended, for instance, a bona fide purchaser agreement. They allowed, here's a statutory avenue to take advantage of how you can buy and revitalize the brownfields without incurring past liability. There is innocent landowner defense, which is available. This court in US v. CDMG was talking about innocent landowner defense, and the Third Circuit said, we think it unlikely that Congress would create a basically useless defense. I think that language applies here. There's a variety of defenses available to anyone who wants to buy a property. EPA signed prospective purchaser agreements for years before the Brownfields Amendments, and then their policy, which is in the record, said we no longer have to do this. The statute has taken care of it. What about the state statute? Does the state statute have an equivalent of the bona fide purchaser defense? Not the equivalent, Your Honor, which is why the Department is still entering into prospective purchaser agreements with facilities who want to revitalize and help clean up and limit their response costs. And what's the authority of the Commonwealth, the EPA, to be able to do that? Is it just part of their enforcement authority with their hat on as a resolver or settler of matters? Well, under HASCA, the actual liability of HASCA is actually broader than CERCLA. It's a whole cradle to grave. If you own the facility when it's placed there, when it is there, or when it's released there, you're liable for entire response costs. So, yes, the Department signs prospective purchaser agreements where companies agree to pay a certain percentage of past response costs. They don't even argue that they're not liable for it. They just negotiate how much the response costs are going to pay, and then we give them a covenant not to sue, so they can proceed and follow a prospective purchaser agreement, not cause problems, not cause additional leases, not interfere with things. In essence, it tracks the Brownfields Amendment's prospective purchaser agreements. But through agreement rather than through the statute. Exactly. There's no daylight, though, for purposes of this case between CERCLA and HASCA. Is there, I mean, the arguments, the centerpiece of this argument about current owner and all costs, there's not a distinction with the difference for liability for this defendant, in your view, is there between HASCA and CERCLA? I would say HASCA has a broader sense of liability. I understand that. That's not my question. My question is, even under the narrower one of CERCLA, you view them as liable, right? We view them as liable under both statutes. Right. So we don't have to get into the distinction between HASCA and CERCLA for purposes of analysis, do we? Well, if you were to choose to follow the district court's view of Harside and say he's not a current owner under CERCLA, he would still be liable under HASCA. Understood. Okay. My question to you is, under your view of it, we don't have, in other words, you disagree with the district court. So if we were to agree with you, there would be no need to consider the difference between HASCA and CERCLA, would there? You're correct, Your Honor. Okay. All right. We thank both sides, Ms. Roya and Mr. Hampton, for their arguments today. We've got the matter under advice.